UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JOHNNIE GIVENS ET AL.                                                    PLAINTIFFS

v.                                                                       No. 3:25-cv-127-BJB

STEVEN MANTLE, ET AL.                                                    DEFENDANTS

\* \* \* \* \*

MEMORANDUM OPINION

Johnnie Givens, an African-American man and former cop, lives in Louisville with his disabled adult son, Micah Davis. According to the allegations in their Amended Complaint, Louisville police broke into their home without a warrant, slammed Givens to the ground, and caused Davis to suffer a seizure. All of this, they allege, resulted from a misleading 911 call and a shoddy investigation.

The Plaintiffs sued several police officers in their personal capacities for federal- and state-law torts—claims that are not at issue in this opinion. They also sued the Louisville Metro Police Department, the Louisville/Jefferson Metro Government, and Jacquelyn Gwinn-Villaroel, who then served as the Chief of Police. In response, those three "supervisory" or "municipal" Defendants moved to dismiss the complaint against them—as well as the individual officers in their official capacities—for failure to state a claim. *See* DNs 5, 6, 20, 21, 23. The Court set a hearing, *see* DN 18, and granted the motions after argument. This opinion memorializes the reasoning for that ruling.

ALLEGATIONS

According to the allegations in the Plaintiffs' complaint, which the Court assumes to be true at this stage, this dispute began with two of his children, two 911 calls, and two guns. In January 2024, Givens's daughter and her boyfriend threatened him with a gun inside the home he shares with his son. Amended Complaint (DN 19) ¶¶ 9, 15.[1] In response, Givens fetched his own gun "to protect himself and his family while dialing 9-1-1 for help." ¶ 10. The boyfriend fled

---

[1] The Plaintiffs filed an amended complaint soon after the Defendants moved to dismiss. But although the amended added a handful of new allegations, it didn't add new claims or theories. In response, the Defendants renewed their motions to dismiss. *See* DNs 20, 21, 23. For this opinion, nothing turns on the differences between the first and second rounds.

1

alongside Givens's daughter, who called 911 more than an hour later from a different location. To the dispatcher, she accused Givens of domestic violence. ¶¶ 11–12, 16. After speaking with his daughter but before completing their investigation, LMPD officers decided to arrest Givens. "We're gonna knock on the door," an officer told Givens's daughter, and "if he answers he's gonna go to jail per Kentucky state law." ¶ 13.

When the officers arrived, Givens laid down his gun and relayed that his disabled son was in the next room in a hospital bed. ¶¶ 14–15. Givens provided his version of the argument, but officers told him they were required to arrest him per "Kentucky State Law." ¶ 18. Then Givens attempted to shut his front door, but the officers (who lacked a warrant) kicked the door open and slammed Givens to the ground. ¶¶ 20–21. This hurt Givens and caused Davis to suffer a seizure. ¶ 22.

Prosecutors charged Givens with "Assault 4th Degree—Domestic Violence." ¶ 25. But the charge was dismissed on December 2, 2024, "with no stipulation of probable cause." ¶ 28.

Givens and Davis filed this lawsuit against 15 individual officers who allegedly broke into Givens's home, as well as a trio of supervisory Defendants allegedly responsible for the individuals' actions. Against the individual officers, Plaintiffs pled several Fourth Amendment claims under 42 U.S.C. § 1983, ¶¶ 37–44, and various state-law tort claims, ¶¶ 73–98.[2] Against Chief Gwinn-Villaroel, they alleged supervisory liability (presumably under both § 1983 and state law) based on unconstitutional policies, ratification of unlawful actions, and failure to train, supervise, or discipline. ¶¶ 49–59. Against LMPD and Louisville Metro, Plaintiffs asserted essentially identical allegations of unconstitutional policies and customs, failure to train and supervise, inadequate investigation of misconduct, and failure to enforce policies and legal requirements. ¶¶ 60–72.[3]

Plaintiffs filed their complaint in Jefferson Circuit Court on January 31, 2025. DN 6 at 4. Chief Gwinn-Villaroel removed the action to this Court on March 3, 2025. Notice of Removal (DN 1). LMPD, Louisville Metro, and the individual officers filed a partial motion to dismiss. DN 5. Chief Gwinn-Villaroel separately filed a motion to dismiss in both her official and individual capacities. DN 6. After Plaintiffs

---

[2] The state-law claims against the individual officers include assault and battery, ¶¶ 73–78; negligence, gross negligence, and negligence per se, ¶¶ 79–86; false imprisonment, ¶¶ 87–90; official misconduct under KY. REV. STAT. § 522.020, ¶¶ 91–94; and malicious prosecution, ¶¶ 95–98.

[3] Plaintiffs sued all individual defendants in both their individual and official capacities. ¶¶ 3–4. For all claims, Plaintiffs seek compensatory damages, punitive damages, and attorney's fees. *Id.* at 18.

2

amended their complaint to add factual details from body camera footage, all 18 Defendants renewed their motions. DNs 20, 21, 23. This Court held a hearing on June 26, 2025.

## ANALYSIS

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept well-pled factual allegations as true, it is not required to accept "legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### A. LMPD is not a suable entity.

Givens's claims against LMPD fail for a straightforward reason: the Department itself can neither sue nor be sued. Courts have consistently recognized that LMPD lacks the power to sue or be sued. *See, e.g.*, *Marshall v. O'Connell*, No. 14-6372, 2016 WL 11781769, at *1 (6th Cir. June 3, 2016) ("Because the LMPD is not subject to suit, [Plaintiffs'] claims against that entity are actually against the Louisville Jefferson County Metro Government.") (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)). Without identifying any statutory or decisional law to the contrary, the Plaintiffs can't maintain claims against the police department itself. And they conceded as much at the hearing: because LMPD is not a suable entity, their allegations against it effectively run against Louisville Metro.

### B. Plaintiffs fail to state a claim under *Monell*.

The heart of these motions concerns the Plaintiffs' attempt to hold Louisville Metro and its leadership liable for the officers' alleged constitutional violations. Municipalities are not automatically liable, however, just because their employees violated the Constitution; section 1983 doesn't enact *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, plaintiffs may recover from municipalities only if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* The preliminary question under *Monell* is thus "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hart v. Michigan*, 138 F.4th 409, 425 (6th Cir. 2025) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

Sixth Circuit "precedent provides at least four methods to prove a municipality's illegal policy or custom—the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision

making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (quotation marks omitted).

The amended complaint's allegations do not satisfy any of the four methods.

**1. Official Policy.** The original and amended complaints do not identify any LMPD policy that caused the Plaintiffs' alleged constitutional injuries. The one specific policy Plaintiffs discuss, LMPD Standard Operating Procedure 8.6, appears only in their response brief, *see* DN 24 at 1–2. Yet "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Morgan Distributing Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

And even considering this policy, Plaintiffs' theory would still fail.

The relevant provision states that when an officer has "probable cause to believe" a person has caused physical injury in a domestic violence situation, the officer "will arrest the person without a warrant." SOP 8.6. The Plaintiffs argue that policy breaks with KY. REV. STAT. § 431.005(2)(a), which only says officers "may arrest." This argument, however, is beside the point. Whether LMPD policy is mandatory while state law is permissive says nothing about whether either one violates the federal Constitution. It doesn't even demonstrate a conflict between city and state law: To require arrest every time state law permits it is—so far as the Court can tell—one legitimate way to exercise the discretion afforded by the statute.

And as far as the federal Constitution is concerned, LMPD's policy matches the relevant Fourth Amendment standard: both allow warrantless arrests when an officer has probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Nothing in the policy encourages officers to arrest without probable cause, and Plaintiffs nowhere allege that it tacitly supports such a custom.

**2. Ratification.** Plaintiffs next allege that Defendants "approved or ratified" the unlawful conduct of the officers. Amended Complaint ¶ 63. To support the ratification theory, Plaintiffs allege that Defendants "took no disciplinary action" and "inadequately … investigated incidents of police misconduct." ¶¶ 66, 68. Even assuming the truth of this arguably conclusory allegation, *but see Iqbal*, 556 U.S. at 678, it concerns only the Defendants' actions in this case: an allegation that the police inadequately investigated this one situation. "To establish *Monell* liability for ratification based on a failure to investigate," however, "a plaintiff needs to show 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Hart*, 138 F.4th at 425 (quoting *Pineda v. Hamilton County*, 977 F.3d 483, 495 (6th Cir. 2020)).

The amended complaint identifies no earlier inadequate investigations.[4]

**3. Custom.** The Plaintiffs' effort to repackage their ratification theory as a custom theory is unavailing for the same reason. To plead an unlawful custom under *Monell*, a plaintiff must plead that the municipality has "(1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the [violation of Plaintiffs' rights] here." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005). That's a high bar. As *Monell* itself recognized, a "custom" exists only if it is "so permanent and well settled as to constitute a … usage with the force of law." *Vereecke v. Huron Valley School District*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Monell*, 436 U.S. at 691). "[O]ne instance of potential misconduct" is—as with ratification theories—ordinarily not enough. *Thomas,* 398 F.3d at 432; *see id.* at 432–33 (explaining that single-instance custom liability "would result in the collapsing of the municipal-liability standard into a simple *respondeat superior* standard … forbidden by the Supreme Court"). The amended complaint contains no other incident of alleged misconduct and thus does not establish a custom.

**4. Failure to Train.** The same pattern repeats with the Plaintiffs' last theory. Like ratification and custom liability, failure-to-train liability usually requires a recurring problem, not a one-off. A plaintiff must show: (1) the training program was inadequate, (2) the inadequacy resulted from the municipality's deliberate indifference, and (3) the inadequacy "was closely related to or actually caused" the plaintiff's injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019).

The Plaintiffs plead nothing of consequence about the second element—that a municipal actor "disregarded a known or obvious consequence of his action," *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation marks omitted). Most often, a plaintiff meets this deliberate-indifference standard by pointing to "prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the

---

[4] The Sixth Circuit's rule that a single instance doesn't amount to a pattern of ratification is both commonsensical and chronological. "[A]n entity's failure to investigate the plaintiff's specific claim will, by definition, come *after* the employee's action that caused the injury about which the plaintiff complains." *Pineda*, 977 F.3d at 495; *see also id.* ("[A] single failure to investigate an incident cannot have caused that incident.") (quoting *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015)). In the failure-to-*train* context, by contrast, some courts have recognized that a single egregious misstep might support *Monell* liability all by itself. For good doctrinal and logical reasons, the Plaintiffs haven't made an overt single-instance argument here. And none of the LMPD practices they describe appears "so reckless or grossly negligent that future police misconduct [would be] almost inevitable." *Harvey v. Campbell County*, 453 F. App'x 557, 567 (6th Cir. 2011) (quotation marks omitted); *see also Napper v. Hankison*, 617 F. Supp. 3d 703, 738–39 (W.D. Ky. 2022).

5

training was deficient." *Jackson*, 925 F.3d at 836 (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)). But these Plaintiffs don't do that. At the hearing, they conceded that their sole factual allegation about police training was a single officer's statement that "Kentucky law" required Givens's arrest. As the Court recognized at the hearing, however, that's an awful lot of water to pour into a single comment. One officer's understanding of state law, even if erroneous, doesn't establish much of anything about LMPD's training program. Nor does an officer's perhaps-too-quick invocation of law suggest training so deficient as to fall short of constitutional standards.

To be sure (and as explained, *see* above n.4) a plaintiff can sometimes show deliberate indifference through a single (staggeringly heinous) violation. But to trace this path, a plaintiff still must allege *something* about the training and its deficiencies. These Plaintiffs don't. All they say, beyond the description of a single officer's statement during the incident at hand, is that "Defendants failed to adequately train … their police officers." ¶ 69. On what topics? In what ways? How did that failure causally connect to this incident? The Plaintiffs simply do not say. And boilerplate allegations like these don't come close to showing a constitutional infirmity in Louisville Metro's police training.

In sum, the *Monell* claims against Louisville Metro cannot survive because the complaint has not adequately alleged any policy, custom, failure to train, or ratification of illegal practice that would allow Plaintiffs to hold the government liable under § 1983.

**C. Sovereign immunity bars the state-law claims against Louisville Metro and officers in their official capacities.**

Although Louisville Metro has not attempted to assert any immunity from § 1983 liability under federal law, it has asserted immunity from state-law tort claims under Kentucky law. Under the Kentucky Constitution, "[t]he General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." KY. CONST. § 231. Kentucky courts have also held that "absent an explicit statutory waiver, [Louisville/Jefferson County] Metro Government is entitled to sovereign immunity." *Jewish Hosp. Healthcare Services, Inc. v. Louisville/Jefferson County. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008); *see also* KY. REV. STAT. 67C.101(2)(e) ("A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees."). Plaintiffs identify no such waiver here—and in fact conceded at the hearing that they only wished to press federal-law *Monell* claims against Louisville Metro. And as with Louisville Metro, so too with its officers in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits … generally represent only another way of pleading an action against an entity of which

6

an officer is an agent.") (quotation marks omitted).  So the Court dismissed all the state-law claims against both the City and its officers in their official capacities.

### D. Claims against Chief Gwinn-Villaroel in her individual capacity fail.

The Plaintiffs don't allege that Chief Gwinn-Villaroel personally participated in the events of January 31, 2024.  Instead, they claim only that the former Chief "had in effect policies, practices and customs that condoned … the unconstitutional conduct"; "was negligent in hiring, retaining, monitoring, supervising"; and "failed to adequately train, supervise and/or discipline" officers.  Amended Complaint ¶¶ 50–56.  This, they say, makes her "vicariously liable for the acts of her officers."  ¶ 59.  But the Plaintiffs plead no facts explaining these conclusory assertions.

To start, neither federal nor Kentucky law recognizes such sweeping vicarious liability.  Federal law no more allows *respondeat superior* liability against a municipal officer than a municipality itself.  Likewise with Kentucky.  *See, e.g.*, *Moores v. Fayette County*, 418 S.W.2d 412, 414 (Ky. 1967) ("[P]ublic officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those who are employed by them.").  But when it comes to Gwinn-Villaroel's own acts, the Plaintiffs faltered at the hearing.  Beyond enforcing the standard operating procedure—which is a nonstarter for reasons already explained—the Plaintiffs conceded that they had no factual allegations tying the former Chief to this incident.  Yet like all allegations, allegations of negligent supervision or failure to train require specific factual allegations—not "labels and conclusions."  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *see Napper*, 617 F. Supp. 3d at 738 ("Lacking factual support, a blanket allegation that training was inadequate is plainly insufficient under ordinary pleading standards.").  Because the complaint identified no specific facts about Gwinn-Villaroel's own misfeasance, and because the Plaintiffs conceded as much, the Court dismissed all claims against her in her individual capacity.

7

## ORDER

For the reasons stated above and described during the hearing, the Court denied as moot the first round of motions to dismiss (DNs 5, 6) and granted the second round (DNs 20, 21, 23). These dismissed all claims against LMPD, Louisville Metro, its officers in their official capacities, and Chief Gwinn-Villaroel in both her official and individual capacities.

The Court orders the parties to promptly confer about the remaining claims under FED. R. CIV. P. 26(f) and file a joint status report regarding the appropriate next steps and schedule no later than **March 25, 2026**.

Benjamin Beaton, District Judge
United States District Court

February 25, 2026

8